UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| Daniel Penades,<br><br>        Plaintiff,<br><br>v.<br><br>The Republic of Ecuador,<br><br>        Defendant. | Civil Action No. 15-CV-0725 (RJS) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

Andrew Z. Schwartz, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
Tel: (617) 832-1000
Email: aschwartz@foleyhoag.com

Peter A. Sullivan, Esq.
FOLEY HOAG LLP
1540 Broadway
23rd Floor
New York, New York 10036
Tel: (646) 927-5500
Email: psullivan@foleyhoag.com

January 15, 2016

## INTRODUCTION

The Republic of Ecuador ("Ecuador") submits this memorandum in support of its motion to dismiss the complaint filed by plaintiff Daniel Penades.

The Court should dismiss the complaint for lack of standing and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Mr. Penades has not alleged that he has satisfied the requirements for bringing an action as an individual bondholder under the Indenture Relating to U.S. Dollar Denominated Step-Up Global Bonds Due 2030 (the "Indenture"), which governs the 2030 Step-Up Global Bonds (the "Bonds") that are the subject of Mr. Penades' complaint.

## BACKGROUND

Mr. Penades' claims are based on Ecuador's alleged failure to make interest payments on the Bonds. Complaint, Docket Entry ("D.E.") 2, ¶¶ 2, 5 (attached hereto at Exhibit 1).[1] Mr. Penades alleges that he owns $455,000 of the Bonds. D.E. 2, ¶ 3.

In paragraph 5 of his complaint, Mr. Penades acknowledges that the Bonds were issued by Ecuador pursuant to the Indenture. D.E. 2, ¶ 5. Mr. Penades submitted a copy of the Indenture as Exhibit 9 to his complaint. D.E. 2-1 (attached hereto at Exhibit 2) and 2-2 (attached hereto at Exhibit 3).[2]

---

[1] Pursuant to Rule 2.B. of Judge Sullivan's Individual Rules of Practice, Ecuador has attached Mr. Penades' complaint and the exhibits thereto, D.E. 2, 2-1, 2-2, and 2-3, as Exhibits 1 through 4 to this Memorandum, respectively.

[2] The text of the Bonds is set forth at Exhibits A and B of the Indenture. *See* D.E. 2-2, pp. 22-39. The terms and conditions of the Bonds state that bondholders are "bound by" all of the provisions of the Indenture. D.E. 2-2, p. 23, ¶ 1(a).

**Provisions of the Indenture Relating to Suits by Individual Bondholders**

Section 4.5 of the Indenture, titled "Limitations on Suits by Holders," sets forth three conditions that must be satisfied for an individual bondholder, prior to the Bonds' maturity in 2030, to have the right "to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Indenture or the Bonds ... or for any other remedy hereunder or under the Bonds."  D.E. 2-1, pp. 50-51.  Condition (a) of Section 4.5 requires that a bondholder wishing to institute suit "previously shall have given to the Trustee or the Agent written notice of a default and of the continuance thereof."  D.E. 2-1, p. 50.[3]  Condition (b) of Section 4.5 requires that "the holders of not less than 25 percent in aggregate principal amount of the Bonds then Outstanding shall have made written request upon the Trustee or the Agent to institute such action, suit or proceeding … and shall have offered to the Trustee or the Agent such indemnity as it may require against the costs, expenses and liabilities to be incurred therein."  *Id.*  Condition (c) adds the further requirement that, within 60 days after receipt of the "notice, request and offer of indemnity" required under condition (b), the Trustee or Agent "shall have failed to institute any such action, suit or proceeding" under the Indenture or the Bonds.  *Id.*

In contrast, section 4.6 of the Indenture, titled "Unconditional Right of Bondholder to Receive Principal and Interest *at Maturity*" (emphasis added), governs an individual bondholder's right to bring an action on or after the maturity of the Bonds in 2030.  Section 4.6 provides that "[n]otwithstanding any other provision in this Indenture," a bondholder has the right "to receive payment of the principal of and interest on (including Additional Amounts) its Bonds *on the stated maturity expressed in such Bonds* and to institute suit for the enforcement of

---

[3] The "Trustee" under the Indenture is U.S. National Bank Association and the "Agent" is Citibank, N.A.  *See* D.E. 2-1, p. 34.

any such payment, and such right shall not be impaired without the consent of such Bondholder."

D.E. 2-1, p. 51 (emphasis added).

### Allegations of the Complaint Concerning the Indenture and the Bonds

Mr. Penades acknowledges that the Bonds have not yet matured; he pleads that the "Bonds mature on August 15, 2030." D.E. 2, ¶ 41.

The only allegations in the complaint that even remotely relate to the requirements of Section 4.5 of the Indenture are as follows:

> 67. The Trustee has been advised that Ecuador is in default and plaintiff intention [sic] to litigate.
>
> 68. The trustee informed to the plaintiff that :"Unless directed and indemnified to its satisfaction by the requisite percentage of Holders pursuant to the terms of each Indenture, the Trustee does not currently intend to take any further action with respect to this matter".

D.E. 2, ¶¶ 67, 68.

### ARGUMENT

The complaint does not satisfy the requirements of Section 4.5 of the Indenture. That section sets forth the pre-conditions for an individual bondholder to maintain an action for an alleged failure to make interest payments on the Bonds prior to their maturity. Specifically, the complaint fails to make any allegation that Mr. Penades himself owns or has ever owned 25 percent or more of the outstanding Bonds or that holders of 25 percent or more of the outstanding Bonds have made a written request to the Trustee or the Agent to institute an action under the Indenture or the Bonds. The complaint also fails to allege that the requisite holders offered to indemnify the Trustee or the Agent "as it may require" for the "costs, expenses and liabilities" of such an action.

The allegations of the complaint only underscore Mr. Penades' failure to comply with the requirements of Section 4.5 of the Indenture.  While the complaint alleges that Mr. Penades has communicated with the Trustee in some unspecified fashion and that the Trustee informed him that it would not be taking any action with regard to his desire to litigate, D.E. 2, ¶ 67-68, those allegations are not sufficient to satisfy the Indenture's requirements for an individual bondholder to initiate a lawsuit prior to maturity.  Moreover, although Mr. Penades states in the complaint that the Trustee brought the 25 percent or more threshold requirement to his attention before he commenced this action, *id.*, the complaint is devoid of any allegation that he meets that requirement.

Finally, Mr. Penades' reliance on Section 4.6 of the Indenture as the predicate for this action is fundamentally misplaced.  *See* D.E. 2, ¶ 63 ("Pursuant [sic] Section 4.6 of the Indenture, bondholder [sic] have the right to sue Ecuador in case of default").[4]  Section 4.6 only governs a bondholder's right to bring suit for failure to pay principal and interest *after* the Bonds have matured on August 15, 2030.  Section 4.6 thus has nothing to do with this action, which Mr. Penades commenced in 2015.  Rather, this action – brought some fifteen years before the Bonds' maturity – is subject to the requirements of Section 4.5 of the Indenture.  The complaint plainly fails to meet those requirements.

Accordingly, this action should be dismissed for lack of standing and failure to state a claim upon which relief can be granted.  *See RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10-cv-025, 2011 WL 3251554, *5-8 (S.D.N.Y. July 28, 2011) (dismissing holder's claims against co-issuer of notes because holder did not comply with the limitation on suits

---

[4] In D.E. 32, Mr. Penades' November 30, 2015 response to Ecuador's letter requesting a pre-motion conference, and at the December 29, 2015 pre-motion conference, Mr. Penades confirmed that his complaint is based upon Section 4.6 of the Indenture.

provision of the governing indenture agreement); *Friedman v. Chesapeake & O. R. Co.*, 261 F. Supp. 728, 730 (S.D.N.Y. 1966), aff'd, 395 F.2d 663 (2d Cir. 1968) (granting summary judgment for defendant because preconditions for suit in the governing indenture were not met and "the Complaint, therefore, fail[ed] to state a claim upon which relief can be granted"); *see also SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 531 (E.D.N.Y. 2013) ("[n]o-action clauses are standard provision[s] that are present in many trust agreements…They protect against the exercise of poor judgment by a single bondholder or a small group of bondholders…") (internal quotation marks and citations omitted).

As the courts in both *SC Note Acquisition*, 934 F. Supp. 2d at 53, and *RJ Capital*, 2011 WL 3251554 at *6, observed, provisions like Section 4.5 of the Indenture at issue here must be "strictly construed" (both citing *Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992)). The straightforward application of Section 4.5 necessitates the dismissal of Mr. Penades' complaint.

## CONCLUSION

For the reasons set forth above, this Court should dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

- 7 -

Respectfully submitted,

/s/  Andrew Z. Schwartz
Andrew Z. Schwartz, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
Tel: (617) 832-1000
Email: aschwartz@foleyhoag.com

Peter A. Sullivan, Esq.
FOLEY HOAG LLP
1540 Broadway
23rd Floor
New York, New York 10036
Tel: (646) 927-5500
Email: psullivan@foleyhoag.com

Dated:   January 15, 2016